IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANTONIO WASHINGTON, #197522, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 2:06-CV-1082-MHT |
| | ) |
| BOB RILEY, et al., | ) |
| | ) |
|     Defendants. | ) |

**REPORT OF DEFENDANTS BEVERLY SPIVEY AND**
**BARBOUR COUNTY HEALTH DEPARTMENT, ENVIRONMENTAL DIVISION**

**I.**     **FACTS AND CIRCUMSTANCES**

Beverly Spivey is employed as a Public Health Environmentalist at the Barbour County Health Department. Her responsibilities include inspecting food service establishments and lodging establishments -- including detention facilities. Spivey also inspects body art facilities and onsite sewage disposal system installations. She is also responsible for investigating all animal bites for rabies prevention. Spivey's sole responsibility relating to detention facilities is to conduct sanitary inspections, with reports from those inspections being forwarded to appropriate authorities - the person responsible for the facility, probate judge or mayor, or county or city commission, or Alabama Department of Corrections - as the case may be. See Exhibit A (Affidavit of Beverly Spivey).

Pursuant to § 22-2-2(4) and § 22-3-5(3), *Code of Alabama 1975*, the State Board of Health and county health officers are authorized to inspect detention facilities and if conditions prejudicial to public health are discovered, the appropriate authorities are to take corrective

1

action in response to those conditions.  Such inspections are conducted by environmentalists.  See Exhibit A.  The environmentalists' inspections are made pursuant to the Alabama Department of Public Health's Guidelines for the Inspection of Prisons and Jails.  See Exhibit B.  Inspection reports are issued upon the completion of an inspection.  See Exhibit C.

The plaintiff's amended complaint naming Beverly Spivey and the Barbour County Health Department as Defendants alleges:

> "Defendants Beverly Spivey and the Barbour County Environmental Health Department Commission is being sued and prosecuted in their official capacity and individual capacity for acting in concert with the other defendants herein to interfere with Plaintiff Eighth and Fourteenth Amendment rights of the Untied States Constitution, and for failing to execute their statutory authority to meaningfully inspect Easterling Correctional Facility as required of Defendant Beverly Spivey, et al., pursuant to § 22-2-2(4) and § 22-3-5(3), Ala. Code 1975 and fail to test Easterling foul greasy tasting coloration drinking water Plaintiff is force to drink."

See Plaintiff's Amended Complaint, page 4.  The Plaintiff goes on to allege that the Defendants failed "to take corrective action in response to these prejudicial conditions such as contaminated drinking water, massive overcrowded dorms, dilapitated plumbing, disease carrying rats and insects, poor ventilation with top bunks locker boxes that blocks security view and is an accident waiting to happen."  See Plaintiff's Amended Complaint, page 4.  The Plaintiff lastly contends that "[w]ater testing is not monthly done by Health Department defendants to uphold the State and Federal pure water act and defendants Statutory duties as required pursuant to § 22-2-2(4) and § 22-3-5(3), Ala. Code 1975."  See Plaintiff's Amended Complaint, pages 4-5.

A review of the applicable statutory authority and guidelines reveal that it is not the duty of Defendants Spivey and/or Barbour County Health Department to inspect state detention facilities in order for those facilities to qualify for any particular purpose.  Rather, findings relating to sanitary conditions are forwarded to other proper authorities who are responsible for implementing the recommended actions needed to acquire and maintain a sanitary environment.  Further, the Guidelines for Inspecting Prisons and Jails provide that those "[g]uidelines shall not

be construed to supercede the facility director's consideration of penalogical interest when necessary in the management of special areas, populations, or prisoners." See Exhibit B, Section 01(3)(c), page 3.

Section 22-2-2(4), *Code of Alabama 1975*, states, in pertinent part:

"The State Board of Health shall have authority and jurisdiction … [t]o inspect all … jails … prisons, [and] stockades where convicts are kept …, and whenever insanitary conditions in any of these places, institutions or establishments or conditions prejudicial to health, or likely to become so, are found, proper steps shall be taken by the proper authorities to have such conditions corrected or abated."

(Emphasis added).

Section 22-3-5(3), *Code of Alabama 1975*, states:

"It shall be the duty of the county health officer … [t]o visit all jails, whether county or municipal, and to make careful investigation as respects the drinking water, food, clothing and bedding supplied to prisoners and as to the ventilation, air space, heating and bathing facilities, drainage, etc., of these institutions; and, when any of said supplies are found to be inadequate in quantity or deficient in quality or any of said conditions insanitary, the county health officer shall make in writing a report thereof to the judge of probate and the county commission or the proper municipal authorities, as the case may be; whereupon, said judge of probate and county commission, or the proper municipal authorities, as the case may be, shall carry out whatever recommendations are made by the county health officer, and said health officer shall forward duplicates of his reports to the State Health Officer. In the event of failure of compliance with said recommendations, it shall be the duty of the proper state authorities to take appropriate action."

(Emphasis added).

Section 22-3-5(3), *Code of Alabama 1975*, is not applicable to the present case since Easterling Correctional Facility is not a county or municipal jail. Said facility is a state detention facility. Accordingly, Defendants Spivey and Barbour County Health Department are not bound to inspect said facility pursuant to § 22-3-5(3), *Code of Alabama 1975*. Moreover, neither § 22-2-2(4), § 22-3-5(3), or the Alabama Department of Public Health's Guidelines for the Inspection of Prisons and Jails require Spivey and the Barbour County Health Department to perform

3

monthly testing of the water at Easterling Correctional Facility as the Plaintiff alleges.  The Alabama Department of Public Health's Guidelines for the Inspection of Prisons and Jails recommends that detention facilities be inspected once per year.  See Exhibit B, Section 04(1), page 3.

In Adams v. Mathis, 350 So. 2d 381 (Ala. 1977), the Alabama Supreme Court answered certified questions from the United States District Court of the Middle District of Alabama concerning the identity of the "proper authorities" referred to in the above-referenced statutes' predecessors as it related to a county jail.  The Alabama Supreme Court held that as to county jails, the county commission is the "proper authority" to ensure unsanitary conditions are abated and that should county officials fail to act, the "proper state authority" was the Department of Corrections.  350 So. 2d at 383.  Accordingly, contrary to the Plaintiff's assertions, Defendants Spivey and Barbour County Health Department are not the proper parties to take corrective action in regard to any insanitary conditions at Easterling Correctional Facility.

Further, the public health environmentalists' inspection of detention facilities does not include an inquiry into factors such as the overcrowded dorms and security concerns raised by the Plaintiff.  The inspection guidelines, hereto attached as Exhibit B, and the inspection report, hereto attached as Exhibit C, provide that public health environmentalists inspect detention facilities for the following: (1) water; (2) sewage; (3) plumbing; (4) toilet, hand washing, bathing facilities; (5) solid waste; (6) vermin control; (7) floors, walls, ceilings; (8) lighting; (9) heating/ventilation; (10) laundry; (11) clothing; and (12) bedding.

Easterling Correctional Facility was last inspected by Defendant Spivey on January 22, 2007.  See Exhibit D   The inspection revealed shower tiles in poor condition and showers without cut-off valves in dorms 10A and 10B; peeling paint on the walls of dorm 7B; and worn

4

pillows and mattresses in dorms 7A, 7B, 8B, 10A and 10B. The inspection report was received by Carter F. Davenport, Warden II. Spivey also collected samples of drinking water from the facility's kitchen and dorms 7B, 8B, 10A, and 10B. Those samples were sent to the Alabama Department of Public Health's Bureau of Clinical Laboratories for testing. Total coliform, fecal coliform, e.coli, or confluent growth were absent in the samples collected and, therefore, safe for drinking purposes. See Exhibit E.

**II.   ACTIONS TO RESOLVE THE SUBJECT MATTER OF THE COMPLAINT**

The undersigned is unaware of any action that can be taken by Defendants Spivey and Barbour County Health Department to resolve the subject matter of the Plaintiff's complaint. Easterling Correctional Facility has regularly been inspected pursuant to applicable statutory authority and guidelines. Accordingly, all responsibilities of Defendants Spivey and Barbour County Health Department have been carried out fully.

**III.   OTHER SIMILAR COMPLAINTS**

The undersigned is aware of one similar complaint pending in this Court that should be considered together with the Plaintiff's complaint, *Chris Deshawn Carpenter Muhammad, #204950 vs. Bob Riley, et al.*, 2:06-CV-1076-WKW. Mr. Muhammad's complaint makes similar allegations concerning conditions at Easterling Correctional Facility.

Respectfully submitted this the 16th day of February, 2007.

**/s/ P. Brian Hale**

P. Brian Hale (HAL072)
Assistant Attorney General

Alabama Department of Public Health
P.O. Box 303017
Montgomery, Alabama 36130-3017
Phone: (334) 206-5209
Fax: (334) 206-5874

5

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 16, 2007, I electronically filed the foregoing Report of Defendants Beverly Spivey and Barbour County Health Department with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.  I also hereby certify that I have this date served a copy of said filing on the Plaintiff by placing a copy of same in the United States Mail, postage prepaid, to the following address of record.

    Antonio Washington, #197522
    Easterling Correctional Facility
    200 Wallace Drive
    Clio, AL 36017

                                              **/s/ P. Brian Hale**
                                              P. Brian Hale (HAL072)

STATE OF ALABAMA )
BARBOUR COUNTY )

### AFFIDAVIT OF BEVERLY SPIVEY

COMES NOW, Beverly Spivey, being first duly sworn, deposes and says as follows:

My name is Beverly Spivey. I am employed as a Public Health Environmentalist at the Barbour County Health Department. My responsibilities with the Department include inspecting food service establishments and lodging establishments, including detention facilities. I also inspect body art facilities and onsite sewage disposal system installations. I am also responsible for investigating all animal bites for rabies prevention.

My responsibility relating to detention facilities is to conduct sanitary inspections pursuant to guidelines issued by the Alabama Department of Public Health. The results of my inspections are reported on a "detention facility inspection report," also provided by the Alabama Department of Public Health. Detention facility inspection reports are forwarded to the appropriate authorities - the person responsible for the facility, probate judge or mayor, or county or city commission, or Alabama Department of Corrections - as the case may be.

I last conducted an inspection of the Easterling Correctional Facility on January 22, 2007. The inspection revealed shower tiles that were in not good repair and showers without cut-off valves in dorms 10A and 10B; peeling paint on the walls of dorm 7B; and worn pillows and mattresses in dorms 7A, 7B, 8B, 10A and 10B. I left a copy of my inspection report with Carter F. Davenport, Warden II.

I also collected samples of drinking water from the facility's kitchen and dorms 7B, 8B, 10A, and 10B. Those samples were sent to the Alabama Department of Public Health's Bureau of Clinical Laboratories for testing. Total coliform, fecal coliform, e.coli, or confluent growth were absent in the samples collected and, therefore, safe for drinking purposes.

_____
Beverly Spivey, Affiant

Sworn to and subscribed before me on this the 13th day of February, 2007.

_____
Notary Public

My Commission Expires: 11/28/09

ALABAMA DEPARTMENT OF PUBLIC HEALTH

GUIDELINES

FOR THE INSPECTION OF PRISONS AND JAILS

**Section 01. Statutory authority, purpose, and application**

**(1) Statutory authority -**

(a) These Guidelines are issued under authority of §§ 22-2-2, 22-3-2, and 22-3-5, Code of Alabama, 1975.

(b)  Duties of the county health officer -
To visit all jails, whether county or municipal, and to make careful investigation as respects the drinking water, food, clothing and bedding supplied to prisoners and as to the ventilation, air space, heating and bathing facilities, drainage, etc., of these institutions; and, when any of said supplies are found to be inadequate in quantity or deficient in quality or any of said conditions insanitary, the county health officer shall make in writing a report thereof to the judge of probate and the county commission or the proper municipal authorities, as the case may be; whereupon, said judge of probate and county commission, or the proper municipal authorities, as the case may be, shall carry out whatever recommendations are made by the county health officer, and said health officer shall forward duplicates of his reports to the state health officer. In the event of failure of compliance with said recommendations, it shall be the duty of the proper state authorities to take appropriate action.

**(2) Purpose -**

The purpose of these Guidelines is to provide general recommendations to be used by the Health Officer or his/her representative in the inspection and special supervision over the sanitary conditions of jails in the State of Alabama.

**(3)  Applications and exclusions -**

(a)  The recommendations in these Guidelines shall apply to confinement areas for prisoners unless the context clearly indicates otherwise.

(b) These Guidelines do not constitute mandatory rules, regulations, or standards.  The Health Officer may exercise necessary discretion, depending on individual facts and circumstances, in determining whether "insanitary" conditions, within the meaning of §§ 22-2-2, 22-3-2, and 22-3-5, Code of Alabama, 1975 exist.

(c)  These Guidelines shall not be construed to supercede the facility director's consideration of penalogical interest when necessary in the management of special areas, populations, or prisoners.

### Section 02. Definitions

The following definitions shall apply in the interpretation and application of these Guidelines.

**(1) "Easily Cleanable"** means surfaces are readily accessible and made of such materials and finishes and so fabricated that residue may be effectively removed by normal cleaning methods.

 **(2) "Facility"** the term shall include the following and similar establishments: Any state, county or municipal confinement facility, local lock-up, jail, prison, regional or district confinement facility and detention facility for children or adults, any other confinement operated by or contracted by any state, county, or local government for confinement of persons.

**(3) "Health Officer"** means the authorized representative of the County, Area, District or State Health Officer.

**(4) "Prisoner"** means any person detained or confined in a facility.

**(5) "Sewage"** means any liquid waste containing animal or vegetable matter in suspension or solution and may include liquids containing chemicals in solution from water closets, urinals, lavatories, bathtubs, showers, laundry tubs or devices, floor drains, drinking fountains, or other sanitary fixtures.

### Section   03.  Approval of Plans

**(1)**  Plans and specifications for new construction or major modification of facilities should be submitted to the State Health Department for review prior to construction.

**(2)**  If a kitchen area is part of the new construction, plans should be submitted to the local county health department for review.

### Section 04.  Inspection and Reports

**(1)**  Inspection of each facility shall be made by the Health Officer in accordance with these guidelines as often as necessary, but at least once each year.

**(2)**

(a)  A copy of the inspection report shall be left with a person in charge of the facility at the time of the inspection.

(b)  A written report along with one copy of the inspection report shall be forwarded to the appropriate authority as follows:

      (1)      As to city jails, the city commission or council and city mayor;
      (2)      As to county jails, the county commission and probate judge; or
      (3)      As to state facilities and/or prisons, the Alabama Department of Corrections.

    A copy shall also be provided to the Alabama Department of Public Health, Division of Food, Milk and Lodging.

(c)  Re-Inspection, Visits  -  The Health Officer may re-inspect a facility whenever necessary for a complaint investigation and to determine or verify compliance with these Guidelines.  Should reinspection indicate that compliance with the Health Officer's recommendations was not achieved, a report of that finding shall be made to the Alabama Department of Corrections.

### Section 05.  General sanitary operations

**(1)  Water Supply  and Drinking Water**

(a)  The water supply shall be from an approved source, shall be an adequate amount and of a safe, sanitary quality.

(b)  Hot and cold running water under pressure shall be provided to all lavatories and sinks in the kitchen, laundry, bathing area fixtures, garbage can wash areas, and other areas in which water is necessary for cleaning.

(c)  Where hot water is required, the temperature should be between 100 and 120 degrees Fahrenheit.

(d)  Drinking water should be provided in all areas of the facility.

(e)  The use of a common drinking cup is prohibited.

**(2)  Sewage**

All sewage and liquid wastes shall be disposed of in a public sewage system or by a method approved by the Health Officer.

**(3)  Plumbing**

(a) Plumbing shall be installed to preclude the possibility of backflow or back siphonage. No cross-connections shall exist.

**(4) Toilet, Hand Washing, and Bathing Facilities**

(a)  There should be at least one toilet in every single and multiple occupancy cell.

(b)  There should be available a lavatory with hot and cold running water in every single and multiple occupancy cell.

(c)  Hand soap, hand towels, and toilet tissue should be provided as needed.

(e)  Prisoners should have access to shower facilities on a reasonable schedule to maintain personal cleanliness.

**(5) Solid Waste**

(a)  Except for trash cans in individual cells, all garbage and trash should be kept in a leak proof, non-absorbent container that is kept covered with tight fitting lids.

(b)  All garbage and trash should be disposed of with sufficient frequency to prevent a public health hazard or nuisance.

(c)  Containers should be washed at a frequency to prevent a public health hazard or nuisance.

(d)  All garbage and trash should be disposed of in an approved site.

**(6) Vermin Control**

(a)  Effective measures should be taken to keep flies, roaches, rodents and other vermin out of the facility. The facility should be kept clean, neat, and free from litter.

(b)  All windows that are opened for ventilation shall be screened with 16-mesh or finer screening, doors shall be tight fitting and self-closing, or other effective insect control means shall be provided.

(c)  The facility should have available a licensed pest control operator to maintain a vector control program. Pesticides shall be used only in accordance with all state and federal laws and regulations and only in accordance with label directions.

**(7) Floors , Walls, and Ceilings**

(a) All floors should be constructed to be easily cleanable and non-absorbent.

(b)  Floors should be kept clean, in good repair, and free of standing water.

(c)  The walls and ceilings of all rooms and areas should be kept clean and in good repair.

**(8) Lighting**

All rooms should be well-lighted by natural or artificial means with adequate lighting to determine cleanliness of the inspected area.

**(9) Heating & Ventilation**

(a)  A heated and adequately ventilated environment should be provided for prisoners.

(b)  The air temperature in the inspected confinement area should be maintained between 65 degrees and 85 degrees Fahrenheit.

**(10) Laundry**

(a)  If laundry facilities are provided on-site, the machinery should be sized to meet the needs of the facility, kept clean, and in good repair.

(b)  If laundry facilities are not available at the facility, other appropriate methods should be provided for maintaining the cleanliness of linens, clothing, and other washable items as needed.

**(11) Clothing**

(a)  If the facility provides uniforms, clean clothing should be provided on a regular basis.

(b)  If the facility does not provide clothing, arrangements should be made for washing of prisoner's clothing.

**(12) Bedding and Linens**

(a)  All bunks, mattresses, and so forth should be kept clean and in good repair.

(b)  Clean bed linen and mattresses with washable covers should be provided to each prisoner except when penalogical interests dictate otherwise.  Linen should be changed on a regular basis.

(c)  Clean linen, spare mattresses, and other bedding items should be stored and handled in a sanitary manner to afford protection from dust, dirt, vermin, or other contamination.

(d)  Dirty linen should be stored separate from clean linen and handled in such a manner to prevent contamination.

(e)  Fire resistant mattresses shall be used in all facilities.

**(13)  Food Service**

(a)  Except as provided in part (b) of this Item, facility food service operations shall meet the Alabama Department of Public Health "Rules for Food Service Sanitation", Chapter 420-3-22.

(b)  A Permit to Operate need not be issued to the facility food service operation.  The minimum inspection frequency for the food service operation shall be the same as for the facility itself; provided that, reinspections or visits to the kitchen to determine compliance may be specifically based on the kitchen inspection.

# ALABAMA DEPARTMENT OF PUBLIC HEALTH
## DETENTION FACILITY INSPECTION REPORT

Dr. Donald E. Williamson, M.D.
State Health Officer

_____ County

**Notice:** The deficiencies noted should be addressed as soon as possible. The recommendations to correct the noted deficiencies are based upon Alabama Department of Public Health "Guidelines for the Inspection of Prisons and Jails."

| Facility Name: | Director: | |
|---|---|---|
| Address: | | Zip Code: |

| Date | Insp. Time | | Design Capacity | Population | Telephone | Purpose |
|---|---|---|---|---|---|---|
| | IN | | | | | ☐ Regular |
| | OUT | | | | | ☐ Complaint  ☐ Other |

| Description | Non-compliance? (X) | Comments |
|---|---|---|
| 01 **Water:** source, approved; Public ( ) Private ( ) | | |
| Hot and cold water under pressure | | |
| Drinking water provided | | |
| 02 **Sewage:** sewage and waste water disposal | | |
| Public ( ) Private ( ) | | |
| 03 **Plumbing:** Installed, maintained | | |
| Cross connections, back siphonage, backflow | | |
| 04 **Toilet, Hand Washing, Bathing Facilities:** | | |
| Adequate number, convenient, designed, installed | | |
| Good repair, clean | | |
| Hand cleaner, tissue, towels provided | | |
| 05 **Solid Waste:** | | |
| Containers, adequate number, clean, covered | | |
| Outside storage area clean, properly constructed | | |
| 06 **Vermin Control:** | | |
| Presence of insects, rodents | | |
| Outer openings protected | | |
| 07 **Floors, Walls, Ceilings:** | | |
| Floors, constructed, drained, clean, good repair | | |
| Walls and ceiling, good repair, clean | | |
| 08 **Lighting:** | | |
| Adequate, provided as required | | |
| 09 **Heating/Ventilation:** | | |
| Room temperature maintained | | |
| Room and equipment vented as required | | |
| 10 **Laundry:** | | |
| Clean, soiled clothing, linen properly stored | | |
| Clean and good repair | | |
| Equipment, good repair, maintained | | |
| 11 **Clothing:** | | |
| Provided, regular changes, clean | | |
| 12 **Bedding:** | | |
| Clean linen provided | | |
| Mattresses, etc., in good repair; storage | | |

Areas Visited:_____
_____
_____
_____
_____
_____
_____

Inspected by:_____
Name:_____
Received by:_____
Name:_____
Title:_____
Accompanied by:_____

SAMPLE ADPH-FLP-1103/3-2004 (BS)

# ALABAMA DEPARTMENT OF PUBLIC HEALTH
## DETENTION FACILITY INSPECTION REPORT

Dr. Donald E. Williamson, M.D.
State Health Officer

County: Barbour

Notice: The deficiencies noted should be addressed as soon as possible. The recommendations to correct the noted deficiencies are based upon Alabama Department of Public Health "Guidelines for the Inspection of Prisons and Jails."

| Field | Value |
|---|---|
| Facility Name | Easterling Correctional Facility |
| Director | Gwen Mosely |
| Address | 200 Wallace Dr, Clio, AL |
| Zip Code | 36017 |
| Date | 01/22/07 |
| Population | 1260 |
| Purpose | ☐ Regular ☐ Complaint ☐ Other |

| # | Description | Non-compliance? (X) | Comments |
|---|---|---|---|
| 01 | Water: source, approved; Public (✓) Private ( ); Hot and cold water under pressure; Drinking water provided | | |
| 02 | Sewage: sewage and waste water disposal Public (✓) Private ( ) | | |
| 03 | Plumbing: Installed, maintained; Cross connections, back siphonage, backflow | | |
| 04 | Toilet, Hand Washing, Bathing Facilities: Adequate number, convenient, designed, installed; Good repair, clean; Hand cleaner, tissue, towels provided | | Shower tiles not in good repair (10B, 10A) Showers missing cut off valves (10B, 10A) |
| 05 | Solid Waste: Containers, adequate number, clean, covered; Outside storage area clean, properly constructed | | |
| 06 | Vermin Control: Presence of insects, rodents; Outer openings protected | | |
| 07 | Floors, Walls, Ceilings: Floors, constructed, drained, clean, good repair; Walls and ceiling, good repair, clean | | Peeling paint - 7B |
| 08 | Lighting: Adequate, provided as required | | |
| 09 | Heating/Ventilation: Room temperature maintained; Room and equipment vented as required | | |
| 10 | Laundry: Clean, soiled clothing, linen properly stored; Clean and good repair; Equipment, good repair, maintained | | |
| 11 | Clothing: Provided, regular changes, clean | | |
| 12 | Bedding: Clean linen provided; Mattresses, etc., in good repair; storage | | Some pillows & mattresses |

Areas Visited: 10B, 10A, 8B, 7A, 7B

Smoke Detectors - 7A

Inspected by: B____ / John Bell
Name:
Received by: [signature]
Name:
Title:
Accompanied by:

ADPH-FLP-1103/3-2004 (BS)

