**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ANTONIO WASHINGTON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **2:06-CV-1082-MHT** |
| **BOB RILEY, ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**SPECIAL REPORT**

COME NOW the Defendants, **Bob Riley, Richard Allen, Brian Mitchell, Gwendolyn Mosley, Paul Whaley, Sandra Hayes, Latrice Greene, and Charlotte Wilson,** by and through undersigned counsel, and in accordance with this Honorable Court's January 9, 2007, Order, offer the following written report.

**PARTIES**

1. The Plaintiff, Antonio Washington, is an inmate of the Alabama Prison System currently housed at Easterling Correctional Facility.

2. Defendant Bob Riley is Governor of the State of Alabama.

3. Defendant Richard Allen is Commissioner of the Alabama Department of Corrections.

4. Defendant Brian Mitchell is a Psychological Assistant II for the Alabama Department of Corrections, and is currently assigned to Easterling Correctional Facility.

5. Defendant Gwendolyn Mosley is a Warden III for the Alabama Department of Corrections, and is currently assigned to Easterling Correctional Facility.

6.  Defendant Paul Whaley is the Director of Classification for the Alabama Department of Corrections.

7.  Defendant Tracey Brown is a former employee of the Alabama Department of Corrections, and currently resides out of state.  Ms. Brown has not been properly served in this action.

8.  Defendant Sandra Hayes is a Classification Specialist for the Alabama Department of Corrections, and is currently assigned to Easterling Correctional Facility.

9.  Defendant Latrice Greene is a Classification Specialist Supervisor for the Alabama Department of Corrections, and is currently assigned to Easterling Correctional Facility.

10. Defendant Charlotte Wilson is a Classification Specialist for the Alabama Department of Corrections, and is currently assigned to Easterling Correctional Facility.

## **<u>EXHIBITS</u>**

EXHIBIT 1 – Affidavit of Brian Mitchell.

EXHIBIT 2 – Affidavit of Gwendolyn Mosley

EXHIBIT 3 – Addendum to Affidavit of Gwendolyn Mosley

EXHIBIT 4 – Affidavit of Paul Whaley

EXHIBIT 5 – Affidavit of Sandra Hayes

EXHIBIT 6 – Affidavit of Charlotte Wilson

EXHIBIT 7 – Affidavit of Latrice Greene

**PLAINTIFF'S CLAIMS**

Plaintiff claims in his original complaint that the Defendants ". . . acted in concert to make plaintiff the victim of overcrowding, lack of security, health hazard situation [sic] and misappropriate [sic] use of Government Funds for pre-sap, Crime Bill and Aftercare at Easterling Corr. Fac. for ALDOC in violation of plaintiff [sic] Eighth and fourteenth [sic] Amendment of the United States Const. [sic]" Plaintiff alleges specifically against these defendants that they ". . . Force [sic] Plaintiff to take counter productive programs of Pre-sap-Crime Bill [sic] and After care [sic] in order to recieve [sic] Government funding . . . ." Plaintiff also seeks to hold these defendants responsible for alleged deplorable living conditions that he claims exist at Easterling Correctional Facility. Further, in Plaintiff's Amended Complaint, he alleges that Defendants Riley, Allen and Mosley ". . . acts [sic] in concert with other defendants herein to interfere with Plaintiff [sic] 8th and 14th Amendment Civil Rights . . ." by allowing the alleged deplorable conditions to exist at Easterling. Plaintiff does not allege any injury to himself as a result of poor conditions at the prison. Plaintiff requests injunctive relief and five million dollars ". . . in pun. damages and Attorney fees" in the original complaint, and additionally seeks in his amended complaint ". . . Criminal Conspiracy Charges . . . [and] . . . Federal Criminal prosecution from the United States Attorney for the Middle District of Alabama against all herein for acting in concert . . ." to interfere with his constitutional rights.

**DEFENDANTS' RESPONSE**

1.    These Defendants deny that they violated the Plaintiff's constitutional rights.

2.      These Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3.      The Plaintiff has failed to state a claim upon which relief may be granted.

4.      These Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

5.      These Defendants are immune from suit due to qualified immunity.

## STATEMENT OF FACTS

Plaintiff is a violent recidivist currently serving a fifteen year prison sentence for Robbery I.  See, Exhibit 4.  He was previously incarcerated for Robbery I and Theft.  See, Exhibit 4.  These defendants admit that Easterling has more than its share of inmates and is understaffed.  See, Exhibit 2 and 4.   The problem of understaffing, however, is alleviated by officers working overtime in needed areas.  See, Exhibit 2.  The poor prison conditions plaintiff refers to, however, do not exist.  Easterling has contracted with Hurst Pest Control for monthly service to control any roaches, fleas, spiders, rats, mice, ants, and silverfish. See, Exhibit 2.   Easterling has received an Annual Drinking Water Quality Report from the City of Clio, Alabama, showing an acceptable quality of drinking water.  See, Exhibit 2.  Warden Mosley and the staff drink the same water as the inmates with no complaints.  See, Exhibit 2.  There are adequate bathroom facilities for the current prison population and there is adequate ventilation and air quality in the prison.  See, Exhibit 3.  Defendants Mitchell, Whaley, Hayes, Greene and Wilson have no input or participation in or control over prison conditions.  See, Exhibits1, 4, and 7.  Plaintiff has in no way shown any injury as a result of these conditions.

On October 24, 2006, Brian Mitchell attended the Progress Review of Plaintiff in his official capacity as Psychological Associate II for Easterling. Mr. Mitchell signed the Progress Review and agreed with the recommended classification and the recommendation that Plaintiff participate in the Crime Bill Substance Abuse Program, but in no way forced plaintiff to attend. See, Exhibit 1. Plaintiff's previous classification was terminated due to threats of violence. See, Exhibit 1. The recommendation that Plaintiff participate in Crime Bill was not counter productive as blindly alleged because Plaintiff is under Court order to participate in a Substance Abuse Program (SAP). See, Exhibits 1 and 7. Plaintiff's bare assertion that such a program is "counter productive" is incredible given the fact that he is an inmate who cannot obey the simple rules of confinement. See, Exhibit 4. During 17 months of his previous confinement, Plaintiff amassed 21 rule violations, and has currently amassed 13 rule violations in his current term of confinement. See, Exhibit 4.

At no time has anyone forced Plaintiff to participate in any program that would be counter productive. See, Exhibits 1, 2, 4, 5, 6 and 7. No inmate is required to take part in any treatment program. See, Exhibit 4. No one has forced Plaintiff to participate in any program in order to receive government funding. See, Exhibits 1, 2, 4, 5, 6 and 7. No one has violated Plaintiff's constitutional rights in any way. See, Exhibits 1, 2, 4, 5, 6 and 7.

## **ARGUMENT**

### **Summary Judgment Standard**

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In

making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the Plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.
> 898 F.2d at 1532.

**I. Cruel and unusual punishment claims are due to fail.**

Plaintiff appears to be making the argument that the conditions of his confinement violate the Eighth Amendment against cruel and unusual punishment because Easterling is overcrowded, lacks sufficient security and their exist various unspecified health hazards.

Although the Eighth Amendment prohibits "cruel and unusual punishment" of inmates, it does not require that prisons be comfortable. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) A valid Eighth Amendment claim has two components: (1) an objective component which requires that challenged conditions be "sufficiently serious;" and (2) a subjective component which requires that prison officials exhibit "deliberate indifference" to prisoner health or safety. Farmer, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 302-03 (1991)); *Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir. 1994); *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994).

The Supreme Court has held that deliberate indifference describes a state of mind more blameworthy than negligence. *Farmer*, 511 U.S. at 834. "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837

When evaluating prison conditions, courts should keep in mind that a prison population is comprised of a "large, confined population of convicted felons, not a nursery school." *Battle v. Anderson*, 788 F.2d 1421, 1426 (10th Cir. 1986)

> In the Eleventh Circuit, to establish an Eighth Amendment violation of cruel and unusual punishment, a plaintiff must show: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

"The objective component 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ,"' 'but must be balanced against competing penological goals.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579(8th Cir. 1968)   Although several conditions of confinement in combination may also establish an Eighth Amendment violation, to be actionable they must have "a mutually enforcing effect that produces the depravation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id*. at 305

The Eighth Amendment "does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349 — and permits prison conditions that are "restrictive and even harsh," *Farmer v. Brennan*, 511 U.S. at 833 (quoting *Rhodes,* 452 U.S. at 347)   "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (excessive force against prisoner may be cruel and unusual if it inflicts wanton and unnecessary pain though no serious injury) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (double-bunking of inmates in single-occupancy cells not cruel and unusual)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of

an Eighth Amendment violation." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347)  This proposition "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (cruel and unusual to require denationalization of certain wartime deserters)  "Today the Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain,' or are grossly disproportionate to the severity of the crime." *Rhodes*, 452 U.S. at 346 (citations omitted)

The Plaintiff has failed to show an "objective" violation of the Eighth Amendment.  He has failed to allege the deprivation of a single identifiable need such as food, warmth or exercise. The Plaintiff's claims do not rise to the level of a constitutional violation.

Plaintiff attempts to buttress his amorphous allegation of unconstitutional conditions of confinement by generally alleging a lack of security.  He in no way alleges that he has been harmed or attacked by an inmate or prison personnel as a result of insufficient security.  Plaintiff's assertion of lack of security is patently vague and frivolous.   The testimony of Warden Mosley is that understaffing is compensated by officers working overtime as needed.

Under the Eighth Amendment's prohibition of cruel and unusual punishment, inmates have a constitutional right to protection from the constant threat of violence and physical assault by other inmates.  *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates.") (internal quotes and citations omitted).  Nevertheless, not every injury inflicted

on an inmate by another inmate results in a constitutional violation. *Farmer*, 511 U.S. at

834. As the United States Supreme Court explains in *Wilson v. Seiter*:

> After incarceration, only the unnecessary and wanton infliction of pain …
> constitutes cruel and unusual punishment forbidden by the Eighth
> Amendment. To be cruel and unusual punishment, conduct that does not
> purport to be punishment at all must involve more than ordinary lack of
> due care for the prisoner's interests or safety … It is *obduracy and
> wantonness*, not inadvertence or error in good faith, that characterize the
> conduct prohibited by the Cruel and Unusual Punishments Clause,
> whether that conduct occurs in connection with establishing conditions of
> confinement, supplying medical needs, or restoring official control over a
> tumultuous cellblock.

*Wilson v. Seiter*, 501 U.S. 294, 298-99, 111 S. Ct. 2321, 2324 (1991) (quoting *Whitley v.

Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084 (1986)) (emphasis added). In *Farmer v.

Brennan*, the United States Supreme Court held that the Eighth Amendment is violated

by "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to

an inmate." *Farmer*, 511 U.S. at 828. Prison officials may be liable "where they are

'deliberately indifferent to a prisoner's constitutional rights, either because they actually

intended to deprive him of some right, or because they acted with reckless disregard of

his right to be free from violent attacks by fellow inmates.'" *Zatler*, 802 F. 2d at 400-401

(quoting *Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984)). It is important to note,

however, that a mere negligent failure to protect an inmate from an attack by a fellow

inmate does not result in liability under §1983. *Farmer*, 511 U.S. at 835 (Deliberate

indifference "describes a state of mind more blameworthy than negligence."); *see also

Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Daniels v. Williams*, 474 U.S. 327,

330-31 (1986); *Bailey v. Board of County Commissioners*, 956 F.2d 1112, 1121 (11th

1992).

The "deliberate indifference" standard is comprised of two parts. First, the standard requires the alleged deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834 (citations omitted). "[A] prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id*. (internal quotes and citations omitted). Where an inmate's complaint involves an attack by another inmate, this objective aspect of the standard requires the inmate to establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Second, in *Farmer*, the Supreme Court adopts a subjective test for "deliberate indifference," holding:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Furthermore, the known risk of injury must be "'a strong likelihood, rather than a mere possibility'" before a correctional officer's failure to protect can constitute deliberate indifference. *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)). In addition, the plaintiff must provide proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional violation to establish a claim under 42 U.S.C. §1983. *Zatler*, 802 F.2d at 401. When defendants are sued in their individual capacities, the causation inquiry must be more "refined and focused." *Id*.

In this case Plaintiff fails to state a cause of action entirely because he alleges no

injury.  He makes no allegations that there is a "serious risk of substantial harm" or that there is a strong likelihood of serious injury, much less any deliberate indifference.

Plaintiff then attempts to buttress his claim of unconstitutional conditions of confinement by alleging that conditions are a health hazard.  This allegation is so vague, that is fails to put the Defendants on notice as to what allegedly constitutes a health hazard and therefore, no response can be given.

## II. Plaintiff is not forced to participate in "self-help" programs and fails to state a constitutional cause of action.

Plaintiff alleges that he has been forced to "take counter productive programs, such as "Pre-sap, Crime Bill and aftercare."  Even if this were true, which it is not, it is not clear what constitutional cause of action this would constitute despite his unsupported allegation that this violated his 8th and 14th amendment rights.  The facts are that Plaintiff has been recommended for substance abuse programs, but has not been forced to participate in these programs.

There is no law that the undersigned can find that suggests participation in a substance abuse program, even if it were mandatory which is not the case here, violates a prisoner's constitutional rights.  In the case of *Boyd v. Coughlin*, 914 F.Supp. 828 (N.D.N.Y. 1996) the New York court noted:

> The Supreme Court, in deference to "the complexities of prison administration," has set forth a multi factored analysis to determine when governmental impingement of an inmates constitutional rights is permissible. *See Turner v. Safley,* 482 U.S. 78, 89-90, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349-50, 107 S.Ct. 2400, 2405, 96 L.Ed.2d 282 (1987). "The *Turner* Court determined that the factors to be considered are: 1) whether there is a rational relationship between the regulation and the legitimate government

interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest." *Benjamin, supra in n. 3* (citing, *Turner,* 482 U.S. at 89-90, 107 S.Ct. at 2261-62.

It is clear to the court that a rational relationship exists between the required participation in the alcohol and substance abuse treatment program (the regulation) and the governmental interests in reducing drug dependency of inmates, reducing recidivism, providing treatment with the best chance for success inside and outside the prison system, and increasing security. According to the affidavits in support of the defendants' motion, and given the omission of references in the plaintiff's affidavits, there are no ready alternatives available to the defendants. Moreover, the creation of an alternative program would affect the prison system greatly in terms of financial and administrative costs that the defendants allege are unreasonable. Accordingly, assuming *arguendo* that the defendants have impinged the plaintiff's First Amendment rights, pursuant to the *Turner-O'Lone* standards, such impingement is arguably permissible.

## III. These Defendants are entitled to immunity.

To the extent that the Plaintiff asserts his claims against these defendants in their official capacities, the claims must fail because the defendants are entitled to immunity via the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizens. See *Edelman v. Jordan*, 415 U.S. at 663, 94 S. Ct at 1347 and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33

L.Ed. 842 (1890).  All of these Defendants were acting within the scope of their official duties in this instance on behalf of the State of Alabama.  The State of Alabama has not waived its immunity or consented to the filing of such a suit.  The defendants are absolutely immune from suit in this instance.  U.S. Const. amend. 11; Art. I, § 14, ALA. Const.  (The State of Alabama shall never be made a defendant in any court of law or equity); see also *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (a claim against a state official in his official capacity is a claim against the state).

**IV. Plaintiff can not hold Defendants Bob Riley and Richard Allen liable under the theory of respondeat superior.**

It is clear that Defendants Riley and Allen are designated defendants solely on account of their ultimate supervisory roles respectively as head of state government and head of the department which oversees state prisons. The law is well settled that supervisory officials cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of respondeat superior or vicarious liability. *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11 Cir.1994); *Hardin v. Hayes,* 957 F.2d 845, 849 (11 Cir.1992). *Brown v. Crawford,* 906 F.2d 667, 671 (11 Cir.1990). To recover individually from those who act in supervisory capacities, the Plaintiff must show that they are liable either through their personal participation in the acts comprising the alleged constitutional violation or the existence of a causal connection linking their actions with the violation. *Hill,* 40 F.3d at 1192.  Plaintiff's allegations of constitutional violations cannot survive summary judgment since they are grounded solely on vicarious liability. See, *Ford v. Deloach*, Not Reported in F.Supp.2d, 2005 WL 1243346 (M.D. Ala. 2005). Absent some allegation that these defendants knew of, sanctioned, participated in, or

were otherwise "affirmatively linked" to the acts here complained of, the complaint is insufficient to state a cause of action under 42 U.S.C. § 1983.  *See Gilmere v. City of Atlanta, Ga*., 774 F.2d 1495, 1504 (11th Cir. 1985) *cert. denied*.  476 U.S. 1115 (1986).

## V. Any claims of a "conspiracy" fail as a matter of law.

Plaintiff offers only bare unsupported allegations the defendants "acting in concert" and demands the prosecution of these defendants for criminal conspiracy.  The conclusory allegations made by Plaintiff fall short of the requisite pleading for a conspiracy claims and, accordingly, should be dismissed. See, *Ford v. Deloach*, Not Reported in F.Supp.2d, 2005 WL 1243346 (M.D. Ala. 2005).  In "civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required." *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11 Cir.1984):

In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy. *Id.* (citations omitted). Absent even minimum factual support for the existence of a conspiracy under 42 U.S.C.1985(3), these purported claims are due to be dismissed.

## VI. Plaintiff has not stated sufficient injury to state a claim

Plaintiff has not alleged any injury to himself or anyone else as a result of the conditions he complains of.  Plaintiff's standing rests solely on the implication that he will benefit from the remedies requested.. The threshold showing for standing must demonstrate, as an "irreducible constitutional minimum," (1) that the plaintiff has suffered an injury in fact; (2) that the injury is fairly traceable to the actions of the

defendant; and (3) that the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Miccosukee Tribe of Indians of Florida v. Florida State Athletic Commission,* 226 F.3d 1226 (11 Cir.2000); *Harris v. Evans,* 20 F.3d 1118, 1121 (11 Cir.1994). An "injury in fact" requires an invasion of a legally protected interest which is both concrete and particularized as well as actual or imminent, not conjectural or hypothetical. *See Miccosukee Tribe of Indians of Florida,* 226 F.3d at 1229; *E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979, 984 (11 Cir.1990).  Plaintiff has not and cannot meet this burden.

## **CONCLUSION**

There are no genuine issues of material fact, and these Defendants are entitled to judgment as a matter of law.  WHEREFORE, these Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING
Attorney General


/s/ Benjamin H. Albritton
Benjamin H. Albritton
Assistant Attorney General


ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7555

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have, this the 20<u>th</u> day of February, 2007, served a copy of the foregoing upon all other defendants via Electronic Filing and on the Plaintiff by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Antonio Washington, AIS #197522
Easterling Correctional Facility
200 Wallace Drive
Clio, Alabama 36017

/s/ Benjamin H. Albritton
Benjamin H. Albritton
Assistant Attorney General

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTONIO WASHINGTON, #197522    )
    Plaintiff,    )
        )
VS.    )
        )    CASE NO. 2:06-CV-1082-MHT
        )
BOB RILEY, GOVERNOR, et.al.    )
    Defendant (s)    )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Brian Mitchell</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is <u>Brian Mitchell</u>, and I am presently employed as <u>Psychological Associate II</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On October 24, 2006, I attended the Progress Review of Inmate Antonio Washington, AIS# 197522A, in my official capacity as *Psychological Associate II* for Easterling Correctional Facility. I signed the Progress Review in agreement with the Classification recommendation and recommended that Inmate Washington participate in the Crime Bill Substance Abuse Program. Inmate Washington had been in the previous class, but was terminated due to threats of violence (Exhibit A). The recommendation for Crime Bill is not counter productive because Inmate Washington is court ordered for a Substance Abuse Program (Exhibit B). I do not recommend programs on the basis of receiving government funding. I deny forcing Inmate Washington to take any programs. I do not have control over the inmate population.

I deny having violated any of Inmate Washington's constitutional rights.

*Brian Mitchell*
BRIAN MITCHELL

SWORN TO AND SUBSCRIBED TO before me this the ___2nd___ day of
___January___, 2007.

*Linda E. Jeal*
NOTARY PUBLIC

My Commission Expires: ___7-15-07___

NO Psy meds          NO Physical Limits

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM - OCTOBER 18, 2006
================================(COU122)================================
AIS #: 00197522A     SSN: 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   RACE/SEX:  B/M   DATE OF BIRTH: 08/13/1980
NAME: WASHINGTON, ANTONIO               CUSTODY:  MED9   SECURITY LEVEL: 4
INST: EASTERLING CORRECTIONAL CENT      TIME SRVD: 08Y01M26 LAST DISC: 06 20 2005
CRME: ROBBERY I                         MIN REL DT: 08/21/2013 ACTIVE DET:  0

DISC: POSSESSION OF CONTRABAND          PRL CONS:   05/01/2008 EDUCAT LEV: 09

WL/PGM: Ae/GED
                                        PRIM OCCUP:LABORER - WRECKING,CONSTRUCTIO

RECOMMENDED INSTITUTION: Easterling              RECOMMENDED CUSTODY: Med

JUSTIFICATION: Annual Review. Violent offender and probation violator serving 15 years for

Robbery I. Split sentence was revoked on current Robbery I due to Trespassing in the

Projects. Prior 1998 TOP I. Subject claims 2000 arrest for Rape and Auto Theft that were

both dismissed. No escapes, detainers, or sex convictions noted. Alcohol, cocaine, and

marijuana abuser with Crime Bill SAP needs. Behavior has been positive. No NA/AA

attendance. Recommend no change in custody. Remain at Easterling for Crime Bill SAP.

Terminated CBSAP 8/06 due to threats of violence

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED:    LIKE 10/18/06 Arch   APP. S/L:____

_____   10/24/06        _____   24OCT06
CLASSIFICATION SPECIALIST    DATE       WARDEN OR DESIGNEE    DATE
Brian M Kelly     10-24-06              Daluce Greene  10/26/06
Needs CBSAP
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC. DATE   CLASSIFICATION COORDINATOR DATE

                        CENTRAL REVIEW BOARD ACTION

___ APPROVED ___ DENIED; DIVERTED TO: _____  REASONS: _____

_____        _____

                                                CRB MEMBER              DATE

___ APPROVED ___ DENIED; DIVERTED TO: _____  REASONS: _____

_____        _____

                                                CRB MEMBER              DATE

___ APPROVED ___ DENIED; DIVERTED TO: _____  REASONS: _____
_____  No cHange 10/26/06

                                                CRB MEMBER              DATE

FINAL DECISION: INST _____ CUSTODY _____ DATE _____

DATE INMATE INFORMED: _____ INMATE'S SIGNATURE: X Antonio Washington 197522
        LAST ACTION:        REL.        DNA:      SKILLS:
10/11/05 AFC @East NC @East med    SKILLS: Carpentry    Na-Diabetic
aed @East 2/20/02                  DI: Never Had one    DNA 1/8/02 @ KLF
Religion: None/unknown

EXHIBIT B

ALABAMA DEPARTMENT OF CORRECTIONS                    INST:  041
INMATE SUMMARY AS OF 05/01/2006                       CODE: CRSUM

**************************************************************************

AIS: 00197522A    INMATE: WASHINGTON, ANTONIO          RACE: B   SEX: M

INST: 041 - EASTERLING CORRECTIONAL CENTER   DORM:  CB   JAIL CR: 003Y 02M 02D

DOB: 08/13/1980   SSN: 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

ALIAS: "CHUCK",

ADM DT: 10/24/2001  DEAD TIME: 000Y 00M 00D

ADM TYP: NEW COMIT FROM CRT W/REV OF PR    STAT: REMOVED FROM SEGREGATION

CURRENT CUST: MED-9   CURRENT CUST DT: 01/16/2002   PAROLE REVIEW DATE: - NONE -

SECURITY LEVEL: (4) FOUR                                              5/08

SERVING UNDER ACT446 LAW IN CLASS IV       CURRENT CLASS DATE:   10/24/2001
INMATE IS EARNING : PROHIBITED FROM EARNING GOODTIME

COUNTY       SENT DT  CASE NO  CRIME                    JL-CR      TERM
TUSCALOOSA 10/24/01 N97300433 ROBBERY I.                11570 015Y 00M 000 CS
           COURT COSTS  : $0000096    FINES : $0000000   RESTITUTION : $0000000

  TOTAL TERM      MIN REL DT    GOOD TIME BAL    GOOD TIME REV    LONG DATE
 015Y 03M 000    08/21/2013    000Y 03M 000     000Y 00M 000     08/21/2013

INMATE LITERAL: ATTEND SAP
**************************************************************************

DETAINER WARRANTS SUMMARY
    INMATE CURRENTLY HAS NO DETAINER WARRANT RECORDS
**************************************************************************

ESCAPEE-PAROLE SUMMARY

    INMATE CURRENTLY HAS NO PAROLE RECORDS

    INMATE HAS NO ESCAPES FROM ADOC SINCE OBSCIS RECORDING B
**************************************************************************

DISCIPLINARY/CITATION SUMMARY

  >> DISCIPLINE: 06/20/2005  TIME LOST: 00Y00M00D   CUST FROM MED9 TO MED9
     DISCIPLINE TYPE: MAJOR                   AT INST: 041    RULE NUMBER: 54
     RETAINED DAYS: 0000   SEQ #: 13   RULE LIT: POSSESSION OF CONTRABAND

  >> DISCIPLINE: 01/25/2005  TIME LOST: 00Y00M00D   CUST FROM MED9 TO MED9
     DISCIPLINE TYPE: MAJOR                   AT INST: 041    RULE NUMBER: 37
     RETAINED DAYS: 0000   SEQ #: 12   RULE LIT: SEXUAL OFFENSE (NONFORCIBLE)/SOLI

    >> CITATION: 11/23/2004                   CUST FROM MED9 TO MED9
       CITATION TYPE: BEHAVIOR CITATION       AT INST: 041    RULE NUMBER: 50
       RETAINED DAYS: 0000   SEQ #: 11   RULE LIT: BEING IN AN UNAUTHORIZED AREA

                         CONTINUED ON NEXT PAGE



IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTONIO WASHINGTON, #197522    )
    Plaintiff,    )
    )
VS.    )
    )    CASE NO. 2:06-CV-1082-MHT
    )
BOB RILEY, GOVERNOR, et.al.    )
    Defendant (s)    )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Gwendolyn Mosley, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Gwendolyn Mosley, and I am presently employed as Warden III, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

Inmate Antonio Washington, #197522 was assigned to Easterling Correctional Facility on February 20, 2002.

At the present time Easterling Correctional Facility has approximately 1268 inmates assigned. All ADOC Facilities are over the required limit of inmates. ADOC is understaffed with Correctional Officers, and Easterling is not fully staffed, but we have officers to work overtime to fill in the areas that are needed.

Our Facility is contracted with Hurst Pest Control, with monthly service. This service includes the control of roaches, fleas, spiders, ants, rats, mice and silverfish (Exhibit #1).

Our Facility received an Annual Drinking Water Quality Report from the City of Clio, Alabama (Exhibit #2). The staff and myself drink the same water and found no complaints with the water.

I have not forced Inmate Washington to take a Counter Productive Program or any other programs at Easterling Correctional Facility. I have not misused any government funds for any programs at Easterling Correctional Facility.

I have not violated any of Inmate Washington's constitutional rights.

Affidavit – Gwendolyn Mosley
Civil Action – 2:06-CV-1082-MHT
Page 2

_Gwen C. Mosley_
GWENDOLYN MOSLEY

SWORN TO AND SUBSCRIBED TO before me this the ___5th___ day of
___January___, 2007.

_Linda E. Teal_
NOTARY PUBLIC

My Commission Expires: ___7-15-07___

**EXHIBIT 1**

HURST PEST CONTROL
P O BOX 673
EUFAULA, AL 36072-0673

# BID

| DATE | |
|------|---|
| 7/20/2006 | 102 |

| BILL TO |
|---------|
| EASTERLING CORRECTIONAL FACILITY<br>P O BOX 10<br>CLIO, AL |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| PEST CONTROL | MONTHLY SERVICE: PEST CONTROL BEGINNING OCTOBER 1, 2006 THRU SEPTEMBER 30, 2007.<br><br>SERVICE INCLUDES CONTROL OF ROACHES, FLEAS, SPIDERS, ANTS, RATS, MICE AND SILVERFISH. | 12 | 135.00 | 1,620.00 |

SS#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
TELEPHONE # 687-6746
PERMIT # 54662

**Total** | | | | 1,620.00

CITY OF CLIO
P.O. Box 219
CLIO, AL 36017

EASTERLING CORRECTIONAL CENTER
200 WALLACE DRIVE
CLIO, AL 36017

PERMIT # 2



C I T Y   O F   C L I O

TOWN HALL
CLIO ALABAMA

Tel: 334-397-2723

## Annual Drinking Water Quality Report

### January—December 2005

We're pleased to present to you this year's Annual Quality Water Report. This report is designed to inform you about the quality water and services we deliver to you every day. Our constant goal is to provide you with a safe and dependable supply of drinking water. We want you to understand the efforts we make to continually improve the water treatment process and protect our water resources. We are committed to ensuring the quality of your water. We utilize two wells and our water resource is groundwater. Well #3 is located on County Road 12 and draws from the Clayton Aquifer. Well # 4 is located on Blue Springs Street with pumping capacity of 850 GPM and draws water from the Tuscaloosa Aquifer. The water we provide to our customers requires no specialized treatment. However, chlorine is added for disinfection purposes.

The Source Water Protection Plan was completed in 1994. It is available at our office providing more information such as potential sources of contamination. I'm pleased to report that our drinking water meets federal and state requirements. If you have any questions about this report or concerning your water utility, please contact Jeremy Hogler at 334-397-2723. We want our valued customers to be informed about their water utility. If you want to learn more, please attend any of our regularly scheduled meetings held on the first & third Monday of each month, 6 P.M. at the Clio City Hall on 3311 Eanville Street.

**COUNCIL**
- Jack Peiffer, Mayor
- Stephanie Sapp
- Marilyn White
- Jack Riley, Pro-Tem
- Beverly Clark
- Kenneth Johnson

VIVIAN
City Clerk

CHRISTI
City Clerk

JOHN
Maintenance
Operator

JEREMY
Certified
Operator

## PLAIN LANGUAGE DEFINITIONS

Non-Detects (ND) - laboratory analysis indicates that the contaminant is not present.
Not Required (NR) - Laboratory analysis not required due to waiver granted by the Environmental Protection Agency for the State of Alabama
Parts per million (ppm) or Milligrams per liter (mg/l) - one part per million corresponds to one minute in two years or a single penny in $10,000.
Parts per billion (ppb) or Micrograms per liter (ug/l) - one part per billion corresponds to one minute in 2,000 years, or a single penny in $10,000,000.
Parts per trillion (ppt) or Nanograms per liter (nanograms/l) - one part per trillion corresponds to one minute in 2,000,000 years, or a single penny in $10,000,000,000.
Parts per quadrillion (ppq) or Picograms per liter (picograms/l) - one part per quadrillion corresponds to one minute in 2,000,000,000 years or one penny in $10,000,000,000,000.
Picocuries per liter (pCi/L) - picocuries per liter is a measure of the radioactivity in water.
Millirems per year (mrem/yr) - measure of radiation absorbed by the body.
Nephelometric Turbidity Unit (NTU) - nephelometric turbidity unit is a measure of the clarity of water. Turbidity in excess of 5 NTU is just noticeable to the average person.
Variances & Exemptions (V&E) - State or EPA permission not to meet an MCL or a treatment technique under certain conditions.
Action Level (AL) - the concentration of a contaminant which, if exceeded, triggers treatment or other requirements which a water system must follow.
Treatment Technique (TT) - (mandatory language) A treatment technique is a required process intended to reduce the level of a contaminant in drinking water.
Maximum Contaminant Level - (mandatory language) The "Maximum Allowed" (MCL) is the highest level of a contaminant that is allowed in drinking water. MCLs are set as close to the MCLGs as feasible using the best available treatment technology.
Maximum Contaminant Level Goal- The "Goal"(MCLG) is the level of a contaminant in drinking water below which there is no known or expected risk to health. MCLGs allow for a margin of safe.

### GENERAL INFORMATION

The sources of drinking water (both tap water and bottled water) include rivers, lakes, streams, ponds, reservoirs, springs, and wells. As water travels over the surface of the land or through the ground, it dissolves naturally occurring minerals and, in some cases, radioactive material, and can pick up substances resulting from the presence of animals or from human activity.

Some people may be more vulnerable to contaminants in drinking water than the general population. People who are immuno-compromised, such as cancer patients undergoing chemotherapy, organ transplant recipients, HIV/AIDS positive or individuals with other immune system disorders, some elderly, and infants can be particularly at risk from infections. These at risk should seek advice about drinking water from the health care providers. EPA/CDC guidelines on appropriate means to lessen the risk of infection by Cryptosporidium and other microbial contaminants are available from the Safe Drinking Water Hotline (1-800-426-4791).

All drinking water, including bottled water, may reasonably be expected to contain at least small amounts of some contaminants. The presence of contaminants does not necessarily indicate that water poses a health risk. More information about contaminants and potential health effects can be obtained by call the Environmental Protection Agency's Safe Drinking Water Hotline (1-800-426-4791).

Based on a study conducted by ADEM with the approval of the EPA, a statewide waiver for the monitoring of Asbestos and Dioxin was issued. This monitoring for these contaminants was not required.

MCL's are set at very stringent levels. To understand the possible health effects described for many regulated contaminants, a person would have to drink two liters of water every day at the MCL level for a lifetime to have a one-in-a-million chance of having the described health effect.

We at the City of Clio work around the clock to provide top quality water to every tap. We ask that all our customers help us to protect our water sources, which are the heart of our community, our way of life and our children's future

### Health effects:

Alpha emitters. Certain minerals are radioactive and may emit a form of radiation known as Alpha radiation. Some people who drink water containing Alpha emitters in excess of the MCL over many years may have an increased risk of cancer.

# Table of Primary Contaminants

Exhibit 2

At high levels some primary contaminants are known to pose a health risks to humans. This table provides a quick glance of any primary contaminant detections.

| CONTAMINANT | MCL | RANGE DETECTED | CONTAMINANT | MCL | RANGE DETECTED |
|---|---|---|---|---|---|
| Bacteriological |  |  | Endothall | 100 | ND |
| Total Coliform Bacteria | < 5% | 0 | Endrin | 2 | ND |
| Turbidity | TT | 0.31 1.05 | Epichlorohydrin | TT | ND |
| Radionuclieds |  |  | Glyphosate | 700 | ND |
| Beta/photon emitters (mrem/yr) | 4 | ND | Heptachlor | 400 | ND |
| Alpha emitters (pci/l) | 15 | 4.12+.57    42+/.2 | Heptachlor epoxide | 200 | ND |
| Radium 228 | 5 | 0.0/-0.4    1.5+/-0.6 | Hexachlorobenzene | 1 | ND |
| Uranium | 30 | ND | Lindane | 200 | ND |
| Inorganics |  |  | Methoxychlor | 40 | ND. |
| Antimony (ppb) | 6 | ND | Oxamyl [Vydate] | 200 | ND |
| Arsenic (ppb) | 10 | ND | PCBs | 500 | ND |
| Asbestos (MFL) | 7 | ND | Pentachlorophenol | 1 | ND |
| Barium (ppm) | 2 | ND | Picloram | 500 | ND |
| Beryllium (ppb) | 4 | ND | Simazine | 4 | ND |
| Cadmium (ppb) | 5 | ND | Toxaphene | 3 | ND |
| Chromium (ppb) | 100 | ND | Benzene | 5 | ND |
| Copper (ppm) | AL=1.3 | ND | Carbon Tetrachloride | 5 | ND |
| Cyanide (ppb) | 200 | ND | Chlorobenzene | 100 | ND |
| Fluoride (ppm) | 4 | 0.71    1.07 | Dibromochloropropane | 200 | ND |
| Lead (ppb) | AL=15 | ND | 0-Dichlorobenzene | 600 | ND |
| Mercury (ppb) | 2 | ND | p-Dichlorobenzene | 75 | ND |
| Nitrate (ppm) | 10 | 0.19    0.0.20 | 1,2-Dichloroethane | 5 | ND |
| Nitrite (ppm) | 1 | ND | 1,1-Dichloroethylene | 7 | ND |
| Selenium | 50 | ND | Cis-1,2-Dichloroethylene | 70 | ND |
| Thallium | 2 | ND | trans-1,2-Dichloroethylene | 100 | ND |
| Organic Chemicals |  |  | Dichloromethane | 5 | ND |
| 2,4-D | 70 | ND | 1,2-Dichloropropane | 5 | ND |
| 2,4,5-TP (Silvex) | 50 | ND | Ethylbenzene | 700 | ND |
| Acrylamide | TT | ND | Ethylene dibromide | 50 | ND |
| Alachlor | 2 | ND | Styrene | 100 | ND |
| Atrazine | 3 | ND | Tetrachloroethylene | 5 | ND |
| Benzo(a)pyrene[PHAs] | 200 | ND | 1,2,4-Trichlorobenzene | 70 | ND |
| Carbofuran | 40 | ND | 1,1,1-Trichloroethane | 200 | ND |
| Chlordane | 2 | ND | 1,1,2-Trichloroethane | 5 | ND |
| Dalapon | 200 | ND | Trichloroethylene | 5 | ND |
| Di-(2-ethylhexyl)adipate | 400 | ND | TTHM | 80 | ND |
| Di(2-ethylhexyl)phthlates | 6 | ND | Toluene | 1 | ND |
| Dinoseb | 7 | ND | Vinyl Chloride | 2 | ND |
| Diquat | 20 | ND | Xylenes | 10 | ND |
| Dioxin[2,3,7,8-TCDD] | 30 | ND | TOC | TT | ND |
| Chlorimines (MRDLG) | 4 | ND | Chlorine (MRDLG) | 4 | ND |
| Chlorite | 1 | ND | Bromate | 10 | ND |
| Chlorine Dioxide (MRDLG) | 800 | ND | HAA5's | 60 | ND |

## TABLE OF DETECTED CONTAMINANTS

| Contaminant | Violation Y/N | Range Detected | Unit Measurement | MCLG | MCL | Likely Source of Contamination |
|---|---|---|---|---|---|---|
| Turbidity 04 Test Results | NO | 0.31 -1.05 |  | n/a | TT | Soil runoff |
| Alpha emitters Results 05 | NO | 4.12+.57  42+/.2 | pCi/l | 0 | 15 | Erosion of natural deposits |
| Combined radium ( 2005) | NO | 0.0/-0.41.5+/-0.6 | pCi/l | 0 | 5 | Erosion of natural deposits |
| Fluoride 2004 Test Results | NO | 0.71    1.07 | ppm | 4 | 4 | Erosion of natural deposits; water additive which promotes strong teeth; discharge from fertilizer and aluminum factories |
| Nitrate (as Nitrogen) (Test results 2005) | NO | 0.19    0.0.20 | ppm | 10 | 10 | Runoff from fertilizer use; leaching from septic tanks, sewage; erosion of natural deposits |

## TABLE OF DETECTED SECONDARY CONTAMINANTS (TEST RESULTS 2004)

| Contaminant | MCL | Range of Detects | Contaminant | MCL | Range of Detects |
|---|---|---|---|---|---|
| Aluminum | 0.2 | 0.067-0.204 | Manganese | 0.05 | ND-0.012 |
| Chloride | 250 | 13.0-16.4 | Zinc | 5 | ND-0.061 |
| Color | 15 | 5-10 | Lead | 0.015 | ND-0.044 |
| Copper | 1 | ND-0.054 | Sulfate | 250 | 97.5-129 |
| Iron | 0.3 | ND-0.359 | Total Dissolved Solids | 500 | 168-248 |

## TABLE OF SPECIAL CONTAMINANTS (TEST RESULTS 2004)

| Contaminant | Range of Detects | Contaminant | Range of Detects | Contaminant | Range of Detects | Contaminant | Range of Detects |
|---|---|---|---|---|---|---|---|
| Calcium | 1.6-2.84 | Hardness CaCo3 | 3.01-7.80 | Alkalinity | 163-236 | Specific Conductance | 436-501 |
| Sodium | 97.5-129 | Langelier Index | -0.38 +0.95 | PH | 8.75-9.769.0 |  |  |

In addition to the primary drinking water contaminants, the utility monitors regularly for the following unregulated and secondary contaminants as regulated by the Alabama Department of Environmental Management. Unregulated contaminants are those for which EPA has not established drinking water standards. The purpose of unregulated contaminant monitoring is to assist EPA in determining the occurrence of unregulated contaminants in drinking water and whether future regulation is warranted.

## TABLE OF UNREGULATED DETECTED CONTAMINANTS

| CONTAMINANT | RANGE OF DETECTS | CONTAMINANT | RANGE OF DETECTS |
|---|---|---|---|
| Bromodichloromethane | 1.60 | Dibromochloromethane | 2.45 |
| Chloroform | 1.26 | Bromoform | 1.35 |

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTONIO WASHINGTON, #197522 )
    Plaintiff, )
     )
VS. )
     )   CASE NO. 2:06-CV-1082-MHT
     )
BOB RILEY, GOVERNOR, et.al. )
    Defendant (s) )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Gwendolyn Mosley, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Gwendolyn Mosley, and I am presently employed as Warden III, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

## ADDENDUM TO PREVIOUS AFFIDAVIT

I have not conspired or interfered with inmate Antonio Washington's 8th or 14th amendment. We do not have inmates waiting in line to use the bathroom facilities. I have seen no evidence that indicated the bathroom facilities are not adequate for the current prison population here at Easterling.

I have seen no evidence or complaints that the Dorms have poor ventilation. All of our Dorms are ventilated by windows, fans, and ventilator fans. The quality of the air in the Dorms is acceptable.

I have not violated any of Inmate Washington's constitutional rights.

                                    _____
                                      GWENDOLYN MOSLEY

SWORN TO AND SUBSCRIBED TO before me this the ___18th___ day of
___January___, 2007.

                                  _____Linda E. Teal_____
                                    NOTARY PUBLIC

My Commission Expires: ___7-15-07___

STATE OF ALABAMA:                    CIVIL ACTION NO. 2:06 cv-1082
MONTGOMERY COUNTY:              WASHINGTON, ANTONIO #197522A


A F F I D A V I T


My name is Paul Whaley II and I am presently employed as the Director of
Classification, Alabama Dept. of Corrections, P O Box 301501, Montgomery, Alabama
36130. I am over the age of twenty-one years. I have 28 1/2 years' experience with the
Alabama Dept. of Corrections, all in the area of inmate classification. I worked at Kilby
as the institutional classification specialist for five years managing a caseload as well as
performing intake and reclassification duties. Following that, I served 9 ½ years as a
member of the Central Review Board where the vast majority of classification
determinations statewide relative to placements, programs, custodies, institutional
assignments and security levels were made. I have served as the Director of
Classification for 14 years. I have attended specialized training with the National
Institute of Corrections. I hold Masters' degrees in both Criminal Justice and Counseling.
I hold a specialized instructor's certificate (#647) issued by the Peace Officers' Standards
and Training Commission. I have given presentations around this state to Circuit Judges,
District Attorneys, and attorneys for CLE credit. I am qualified to testify to the following
with respect to the issues raised in this pleading.

Inmate Antonio Washington #197522 A is a violent recidivist currently serving a
15 year prison sentence for Robbery I.  He has prior incarcerations for the crimes of
Robbery I and Theft.

In his complaint, inmate Washington alleges I have continuously acted to make
the plaintiff a victim of over crowdedness with its attendant issues and have somehow
been culpable in the misappropriation of government funds. These allegations are both
absurd and pathetic and may violate the rules governing frivolous filings as well as the
code relative to slander.

I have done nothing to make this criminal a victim of anything. This is his second
incarceration. Both times he has served times for Robbery I. Crime and prison has been
his choice, not something which incidentally occurred. Overcrowding has been an issue

Page 2 Washington, Antonio #197522A

for decades. Washington knew this when he chose to return. The fact did not deter him. Washington would like to portray himself as the victim. How pathetic. The only victims are those whose constitutional rights were violated by this criminal and, of course, the citizens of Alabama who have to pay the upkeep for criminals like Washington who preys upon the innocent.

Washington's allegations about drug treatment are unfounded. No inmate is required to take part in any treatment program. It is remarkable how he can assess the efficacy of pre-treatment and determine it to be counterproductive. This is a man who cannot even obey the law or follow the simple rules of confinement. Not only did Washington amass 21 rule violations in 17 months of confinement during his last incarceration, he has to date amassed no fewer that 13 during his current term of confinement. Washington's contempt for rules, laws, and regulations is nothing short of profound. Clearly this is an individual who is either incapable of learning from his many mistakes and experiences or worse, simply prefers not to. The latter is strongly suspected. In either contingency, the risk remains unacceptable.

Inmate Washington makes serious allegations about money being passed "under the table" to members of the Parole Board. Litigation under oath should not be used as an opportunity to defame or slander. If Washington has some sort of evidence or proof of this allegation, he should report it to the investigative division of the Alabama Department of Corrections. I have no personal knowledge of this inmate's living conditions. I have no personal knowledge of any allegation regarding the Parole Board. Incarceration was his choice. Treatment may be refused. However, all less restrictive placements programs, and custodies offered by the ADOC are privileges to which no criminal offender enjoys any right or entitlement of consideration, let alone participation.

So far as I am aware, no right of this criminal has been violated.

Page 3 Washington, Antonio #197522A

Paul Whaley II

STATE OF ALABAMA:

COUNTY OF MONTGOMERY:

SWORN TO AND SUBSCRIBED before me this the _9th_ day of _January_, 2007.

Notary Public

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTONIO WASHINGTON, #197522 )
    Plaintiff, )
     )
VS. )
     )    CASE NO. 2:06-CV-1082-MHT
     )
BOB RILEY, GOVERNOR, et.al. )
    Defendant (s) )

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Sandra Hayes, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Sandra Hayes, and I am presently employed as Classification Specialist, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I, Sandra Hayes, Classification Specialist, have in no way violated the constitutional rights of Antonio Washington 197522 in any way. I have not forced Inmate Washington to participate in any programs offered here at the Easterling Correctional Facility. I also have no knowledge of anyone else forcing Inmate Washington to participate in programs, especially those that would be counter productive to him. I have no knowledge of anyone forcing Inmate Washington to participate in programs in order to receive government funding.

I deny violating any of Inmate Washington's constitutional rights.

_____
SANDRA HAYES

SWORN TO AND SUBSCRIBED TO before me this the 2 nd day of
January, 2007.

_____
NOTARY PUBLIC

My Commission Expires: My Commission Expires Jan. 24, 2009

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTONIO WASHINGTON, #197522 )
    Plaintiff, )
     )
VS. )
     )    CASE NO. 2:06-CV-1082-MHT
     )
BOB RILEY, GOVERNOR, et.al. )
    Defendant (s) )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Charlotte Wilson, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Charlotte Wilson, and I am presently employed as Classification Specialist, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I, Charlotte Wilson, Classification Specialist have not violated any constitutional rights of Inmate Antonio Washington B/197522 or any other inmate assigned to Alabama Department of Corrections. I did not force Inmate Washington nor recommend Inmate Washington to participate in Pre-Sap, Crime Bill SAP, Aftercare, or any other programs offered at Easterling Correctional Facility. Inmate Washington has never been assigned to my caseload.

I deny violating any of Inmate Washington's constitutional rights.

_____
CHARLOTTE WILSON

SWORN TO AND SUBSCRIBED TO before me this the ____ day of
_____, 2007.

_____
NOTARY PUBLIC

My Commission Expires: __03|31|07.__

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTONIO WASHINGTON, #197522          )
    Plaintiff,                                     )
                                                   )
    VS.                                            )
                                                   )    CASE NO. 2:06-CV-1082-MHT
                                                   )
BOB RILEY, GOVERNOR, et.al.            )
    Defendant (s)                                  )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Latrice Greene, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Latrice Greene, and I am presently employed as Classification Specialist Supervisor, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I have in no way acted in collaboration with other ALDOC staff to make Inmate Washington the victim of overcrowding, lack of security, or place him in health hazardous situations. I do not have the authorization to allocate nor use Government funds for any Government program, including self-help programs (such as pre-sap, crime bill sap, or aftercare) offered by the Department of Corrections.

I have neither recommended nor forced Antonio Washington to participate in any programs at Easterling Correctional Facility. Inmate Washington was court ordered by his sentencing Judge in Tuscaloosa for mandatory completion of a substance abuse treatment program.

I have not violated any of Inmate Antonio Washington's constitutional rights.

LATRICE GREENE

SWORN TO AND SUBSCRIBED TO before me this the ___4th___ day of
___January___, 2007.

NOTARY PUBLIC

My Commission Expires: __My Commission Expires Jan. 24, 2009__